# W. F. BRABSTON *v.* THE STATE.

1. CRIMINAL LAW.  *Justifiable homicide.   Code* 1880, § 2878.   *Instruction.*

    On a murder trial it appeared that during an election Lanier placed his hand on the shoulder of deceased, who was a candidate, and said: "We will send you up Salt river." Deceased pushed Lanier down and drew a pistol, and as he arose, unarmed, fired at him. The shooting at once became general, culminating in a duel mainly between deceased and accused, and lasting until both fell, the former killed, and the latter wounded. Accused claims that the homicide was justifiable, under § 2878, code 1880, being necessary to prevent the felonious killing of Lanier. *Held*, error to instruct for the state that the homicide was not justifiable, unless the accused shot, not of malice, but because it was necessary to save the life of Lanier, feloniously assaulted by deceased, and *that Lanier had given no provocation for such assault*, but was engaged in lawful business. Such instruction does not define what constitutes a felonious assault, but assumes that what is relied on as a provocation justified the attack made upon Lanier by deceased.

2. SAME.   *Homicide in defense of another.   Code* 1880, § 2878.   *Instruction.*

    Under such circumstances it was likewise erroneous to charge for the state that if the accused, actuated by hatred for the deceased, shot at him when in no danger to his own life or limb, or if, by the use of a deadly weapon, he brought on the duel, his killing of deceased would be murder. This ignores the fact that the deceased began the combat with a third person, who was unarmed, and asserts justification of the assault by the deceased on such person merely because of the latter's conduct and the language above quoted.

3. SAME.   *Instruction in the language of the statute.*

    It is error in such case to refuse an instruction asked by the accused to the effect that if deceased was making a deadly assault upon another, and if accused had reasonable ground to apprehend that deceased designed to kill such other person, and that there was imminent danger of such design being accomplished, the homicide was justifiable. Such instruction is substantially in the language of the statute defining justifiable homicide.   Code 1880, § 2778.

4. SAME.   *Unlawfully inciting an affray.   Responsibility for homicide by another. Instruction.*

    If there is evidence that such conflict was brought about as the result of a conspiracy or concerted arrangement, shared in by accused, and there is testimony tending to show that in the general firing the fatal shot may have come from an outsider, it is error to instruct for the state that "if the jury believe from the evidence that the defendant voluntarily brought

on a difficulty or shooting with the deceased, and thereby caused other persons to take part in the unlawful affray in which deceased was killed, the defendant was guilty of murder, although he may not have fired the fatal shot." If neither accused nor deceased contemplated interference by others, the former will not be responsible if the latter is shot by an outsider.

5. CRIMINAL PROCEDURE. *Homicide. Evidence. Statements of accused.*
   It is not competent for the accused to prove his own statements relative to the homicide, although made immediately thereafter, and while he supposed himself to be mortally wounded.

6. SAME. *Evidence of statements by accused. Right of accused to rebut.*
   If the prosecution introduces evidence of statements made by the accused immediately after the killing, the latter is entitled to bring out, by other witnesses if necessary, the whole statement, or to prove the statement to have been different.

7. SAME. *Examination in rebuttal. New facts. Counter-testimony by defendant.*
   If the state is permitted, after the defense has closed, to introduce evidence of a new and material fact, it is error to refuse evidence offered by defendant to rebut it.

FROM the circuit court of Warren county.

HON. RALPH NORTH, Judge.

The appellant, W. F. Brabston, was indicted for the murder of W. H. Brabston, and appeals from a conviction of manslaughter. The killing occurred in a pavilion at Newman's Grove, a voting precinct in Warren county, during the progress of a primary election held to select candidates for certain offices. More than a hundred people were at and near the pavilion, and in a situation to see or hear something of what occurred at the time of the killing. There is a vast deal of testimony in the record, and much of it that is conflicting; but the leading facts as deduced by the court therefrom are stated in the opinion.

The instructions passed upon by the court are noted in the opinion of the court. The 8th and 9th for the state are as follows:—

"8. The court instructs the jury, that the fact that the defendant saw W. H. Brabston, engaged in a deadly combat with Jas. B. Lanier, would not have warranted him in law, in interfering or

68 MISS.—14

taking part in said conflict with a deadly weapon, until he himself was attacked, if in taking such part, the jury believe he, the defendant, was acutated by a motive of malice, hatred or ill-will against the deceased."

" 9. The court instructs the jury that should they believe from the evidence that the defendant voluntarily brought on a difficulty or shooting with deceased, and thereby caused other parties to take part in an unlawful affray, and in said affray the deceased was killed, the defendant was guilty of murder, although he may not have fired the fatal shot."

The defendant sought to prove certain statements made by the accused when at the house of Mrs. Goff to the effect that he was himself mortally wounded, and that he had shot deceased in self-defense, and that the latter had fired the first shot. This was excluded by the court, and the defendant excepted.

After the evidence for the defense had been submitted, the state offered evidence to identify the pistol picked up on the floor of the pavilion immediately after the shooting as the one used by deceased. The pistol thus exhibited showed only three chambers discharged, and the effect of this evidence was to contradict the testimony of several witnesses for the defense that more than three shots had been fired by deceased. The accused objected to this evidence when offered because not in rebuttal, but the objection was over-ruled. Thereupon the defendant offered counter-testimony to show that the pistol was not the one used by deceased, but this was excluded by the court.

In view of the opinion of the court, it is not deemed necessary to set out any further facts or to give the briefs and arguments relative to the points not passed upon by the court.

*Martin Marshall*, for appellant.

The sixth instruction for the state was erroneous because of the idea that the shooting must not have been actuated by malice ; as if one would not be excusable for shooting in order to prevent a felony, merely because he hated the felon. If one exercises a legal right he is not in law a wrong-doer, even though he may have

rejoiced at its ill effects on another.  Again, the instruction makes accused inexcusable even though the deceased was feloniously attacking Lanier, unless the latter had given no provocation whatever to such an attack.  There is no qualification as to the sufficiency of the provocation.  If Lanier had given provocation, W. H Brabston's attack, if fatal, would have still been manslaughter, which is a felony, and a bystander in killing the felon to prevent the felony, would not be guilty.

The eighth instruction for the state is erroneous, because it gives undue prominence to the ill-will the accused was supposed to bear to the deceased, making that conclusive of his guilt, and omitting all qualification as to the right of the third person to interfere in defense of another.

The ninth instruction is erroneous for these reasons :  (1) There is no evidence that the accused brought on the affray.  (2) It excludes the idea of justification because of the defense of Lanier against a felonious assault.  (3) It makes defendant liable because he was a volunteer merely, even though the killing may have been done by others, and there is no hint of conspiracy or co-operation between accused and others.  By this instruction and the tenth the jury were told that accused was responsible for the act of others, who might have been incited to join in the affray, regardless of his knowledge or consent.  It assumes that he expected others to co-operate.  Instead of giving the 9th and 10th instructions for the state, the court should have given the 23d and 12th asked for the defendants, which announced a contrary rule.

The accused should have been permitted to introduce evidence of the statements made by him immediately after the killing, if for nothing else, to disprove the state's version of what he said. It is a familiar rule that where part of a statement is proved, the other party is entitled to bring out the whole statement.  Roscoe on Crim. Ev. 51 ; *Bowles* v. *The State*, 24 Miss. 456 ; *Scraggs* v. *The State*, 8 S. & M. 726 ; *State* v. *Head*, 44 Miss. 751 ; *Russell* v. *The State*, 53 Ib. 79 ; 1 Greenl. on Ev. §§ 201, 208.

*L. W. Magruder*, on the same side,

Filed a lengthy written argument, reviewing all the facts in the

case, and on the questions of law passed upon the court, making the following points :—

The sixth instruction holds that the danger to Lanier must have been actual, and that he gave no provocation to W. H. Brabston. Defendant was as much entitled to act upon appearances as to danger to Lanier's life as Lanier himself was. The instruction is not cured by any for the defense.

The 10th instruction for the state is directly in the teeth of our statute defining justifiable homicide. It makes an actor in a difficulty which ends in a general affray responsible for the death, regardless of who did the killing. This cannot be, in the absence of conspiracy or the relation of principal and accessory. The doctrine of some of the older authorities cited in Russell on Crimes, 795, and in *Beets* v. *The State*, Meigs, 104, is not the law now. It is neither reason, common sense nor justice. See *Lusk* v. *The State*, 64 Miss. 845.

In this case it does not even appear that the participants in the affray were divided into two parties. It was a general melee, and the original actors were lost sight of.

Our statute makes manslaughter a felony. Code 1880, § 2878. And our statute further changes the common law that a stranger can do in defense of a man only what he could do in his own defense, so that if both combatants were in the wrong and neither would have the right to slay the other, and the slaying would be manslaughter, a third person under the statute may lawfully interfere to prevent the manslaughter.

*R. V. Booth*, on the same side.

I submit that the 9th and 10th instructions for the state are palpably erroneous. They assume the existence of a conspiracy between defendant and others in the absence of any proof as to its existence, and hold defendant liable for all the wounding and killing that was done in the affray, whether he actually did it or not. Clearly, unless defendant fired the fatal shot, he ought not to have been convicted, and the instructions for the defense announce this rule and should have been given. Unless the verdict be clearly

right under the evidence, a new trial must be granted because of these errors.   *Garrard* v. *The State*, 50 Miss. 152; *Fortinberry* v. *The State*, 55 Ib. 409.

The doctrine announced in *Beets* v. *The State*, relied on by appellee, is discussed and shown to be wrong in the cause of *Com.* v. *Campbell*, 7 Allen (Mass.), 543.

*P. Henry*, on the same side.

*T. M. Miller*, attorney-general, for the state.

The case having been fully presented by my associate counsel, I will confine the argument mainly to the 9th and 10th instructions for the state.   The important principle involved in these instructions is, that one may not escape the consequence of a homicide possibly committed by another upon one whom he is in the act of slaying unjustifiably himself.   From the evidence, it cannot be said with absolute certainty whether the defendant killed the accused, or whether some one who came to the rescue fired the fatal shot.   The theory of appellant is that criminal responsibility for the acts of others cannot extend beyond the case of confederates—those who by preconcert engage to do the particular crime, or engage in some unlawful criminal enterprise, and in furtherance of it some of the party committed a crime.

Necessity forbids the application of a principle so dangerous to society, and which presents so many loopholes for the escape of murderers.   Fortunately such is not the law.   *Beets* v. *The State*, Meigs (Tenn.), 104.

This accords with the authority of Archbold, Hawkins, Hale and Russell, all of which authors announce the rule that if two are fighting, and a third takes the part of one of them and kills the other, this will be manslaughter in the third party and murder or manslaughter in the person whom he assisted, according as the fight was premeditated, or upon a sudden quarrel.   See 1 Hale, P. C. 446; 1 Russ. on Cr. 796.

Considering the issue of fact in the case, it is not conceivable that appellant can reasonably complain of these charges, especially since the jury was fully enlightened upon the law of self-defense,

as well as upon the right of a third person to interfere to prevent the commission of a felony.

*J. M. Gibson*, on the same side.

The production by the state, and identification of the pistol owned and used by the deceased, was purely a matter of rebuttal. The defense had introduced much evidence as to the number of shots fired by deceased, and had introduced evidence as to the character of the pistol. Defendant had proved by his own witness that the pistol that fell from the deceased's hands was the pistol picked up. Under these circumstances the identity of the pistol was not the material inquiry. The evidence that rebutted the defendant was that the pistol only showed three cartridges exploded, and this fact the defendant did not offer by any witness to sur-rebut. The only effect of such counter-testimony would have been to corroborate defendant's other witnesses. The purpose of the state in introducing the pistol was to forestall the argument that the state was holding back the pistol. The only material fact shown by this testimony was that the pistol the deceased let fall had three cartridges discharged, and defendant did not offer to rebut this. *Allen* v. *The State*, 66 Miss. 385.

The instructions in this case are supported by the authorities in this country and in England. We cite the following: 1 Ohio St. 66 ; 10 Lea, 261 ; *Beets* v. *The State*, Meigs, 105 ; 23 Mo. 287 ; 60 Ib. 508 ; Bishop's Crim. Law, 702 ; 4 Ired. 113 ; 47 Ill. 376 ; 16 Ark. 568 ; Wharton, Crim. Law, § 478.

The statements of defendant in reference to the killing made on the same day were incompetent. They were made after time for deliberation had elapsed, and at a time different from that testified about by the state's witnesses. They were not therefore in rebuttal. *King* v. *The State*, 65 Miss. 576.

Argued orally by *Martin Marshall, R. V. Booth* and *L. W. Magruder*, for appellant; and by *T. M. Miller*, attorney-general, and *J. M. Gibson*, for appellee.

SHELTON, J., Special Judge, delivered the opinion of the court.

The court reverses this case on instructions given to the jury, on

instructions asked by defendant and refused by the court, and on rulings of the court as to admissibility of certain evidence. The statutes in relation to homicide aid in reaching correct conclusions on the instructions of the trial court. The verdict was " guilty of manslaughter." That is an acquittal of murder, and therefore acquits the accused of any deliberate design to effect the death of the deceased or of any person ; that is, the verdict acquits the accused of malice. Section 2879, code 1880, which defines excusable homicide, cannot be applied. Section 2878, in its definition of justifiable homicide says, " that the killing of a human being, by the act or procurement of another, shall be justifiable when committed by any person in resisting any attempt unlawfully to kill such person or to commit any felony on him, or when committed in the lawful defense of such person, or any other human being, where there shall be reasonable grounds to apprehend a design to commit a felony, or to do some great personal injury, and there shall be imminent danger of such design being accomplished." In the law just quoted the points of justification are, defense by the accused against any attempt by another unlawfully to kill or commit a felony on him, and defense by the accused of another person where there shall be reasonable ground to apprehend a design to commit a felony on that other person, or reasonable ground to apprehend a design to do such other person great personal injury, and imminent danger of such design being accomplished. Sections 2880, 2881, 2885, 2887, and 2893 are the only sections defining manslaughter that can be supposed to apply to this case. Of these, sections 2880 and 2881 refer only to cases in which the killing of a person is by the act or procurement of another person, while that other person, the slayer, is perpetrating or attempting to perpetrate a felony, crime or misdemeanor. Section 2885 refers to cases where the killing is without malice, in the heat of passion, in a cruel and unusual manner, without authority of law, and not in necessary self-defense. Section 2887 refers to killing in heat of passion, without malice, but in the unlawful use of a dangerous weapon, and not in necessary self-defense. Section 2893 declares that every killing without authority of law " not provided for in this chapter

[on homicide] shall be manslaughter." Section 2894, with section 3104, makes manslaughter a felony. There being no malice or deliberate design to effect the death of the deceased or any other person, as the jury by their verdict decided, an important question on the trial was, and will be on another trial, whether the evidence brings the killing within the definition of justifiable homicide, or leaves it out of that definition, controlled by the general provisions in reference to manslaughter. We give no opinion on that question. We only say that it was a question for the jury to decide, guided by the instructions of the court, and therefore it was very important that the jury should be correctly instructed by the court's charges discriminating between the law of justifiable homicide and manslaughter. And this brings us to the consideration of the instructions pertinent thereto.

But it is necessary to refer to some proof made or wanting in the case, in order to show the application of certain instructions given or refused. Near the place where voting was in progress, James Lanier put his hand on the shoulder of deceased, who was a candidate for county supervisor, and said, "We will send you up Salt river in a boat," or words of similar import, importing that he and those voting with him would defeat W. H. Brabston, whereupon Brabston pushed or knocked Lanier (who had a walking cane in his hand) down, and drew a pistol. Lanier rose, and Brabston fired at him, but a by-stander knocked the pistol up. That pistol-shot scattered the crowd, and produced a pistol conflict in which the accused, the deceased, and others participated. On the evidence it is controverted whether W. H. Brabston fired first at the accused, or the accused first at him; also whether the second fire of W. H. Brabston was at the accused or at Lanier, and whether that fire was before or after the first fire of the accused. Whichever way these things were, they produced a duel between the two, with some participation by some of their respective partisans. The duel was kept up until both fell, the accused firing while retiring to a post, the deceased firing while following. At the post the conflict ended. No conspiracy, no premeditated co-operation, no premeditated purpose of conflict, was proved against either party.

Between manslaughter and justifiable homicide a correct verdict depended, not only on the evidence, but also on proper instructions by the court on the legal principles discriminating between the two.

By the sixth instruction for the state the court said to the jury that if on the evidence they believed beyond reasonable doubt that defendant fired the shot that killed W. H. Brabston, then, before they can acquit defendant, it must appear that he, defendant, was first attacked by deceased, or that he reasonably believed at the time that his life or limbs were in great danger of great harm at the hands of W. H. Brabston; or it must appear in evidence that accused shot, not of malice or ill-will against deceased, but because it was necessary to save the life of Lanier feloniously attacked by W. H. Brabston, and that Lanier had given no provocation for such an attack, but was engaged in lawful business. Of that instruction only the last alternative (the defense of Lanier) has reference to the statutory discrimination applicable in this case between manslaughter and justifiable homicide, before quoted, and the instruction does not define what in law would constitute a felonious attack by W. H. Brabston, but puts his justification for his assailment of Lanier with a pistol on any provocation by Lanier, real or imagined, by W. H. Brabston, or rather on the provocation in this case, which was putting his hand on W. H. Brabston's shoulder and saying, while the election was in progress, "We are going to send you in a boat up Salt river."

The seventh and eighth instructions for the state are equally imperfect, unsatisfactory and undiscriminating. All three pass by the fact that W. H. Brabston commenced the mortal combat by the use of a pistol against Lanier, having a walking-cane but otherwise unarmed, and they assert justification of W. H. Brabston only because of Lanier's said act and words. The defendant met these instructions by asking his twenty-fourth and twenty-fifth instructions. The twenty-fourth is: "If the jury believe from the evidence that the deceased was making a deadly assault on Lanier, and that defendant had reasonable ground to apprehend that deceased designed to kill him, or do him great personal injury, and that there was imminent danger of such design being accomplished,

then the defendant had the right to kill the deceased in defense of Lanier; and, if they believe that he did so kill him in such defense, they should acquit him." That is the language of the statutory definition of justifiable homicide (section 2878), except that the instruction after the word "designed" substitutes the words "to kill him" in lieu of the words in the section, "to commit a felony;" but, if to kill Lanier with a pistol under the circumstances supposed in the instruction would have been murder or manslaughter and not justifiable homicide, the killing would have been a felony, for manslaughter is a felony; therefore the statute and the instruction mean the same thing. Instruction 25 tells the jury that if they believe on the evidence certain facts assumed in the instruction, and which would have made W. H. Brabston guilty of murder or manslaughter if he had killed Lanier with a pistol, and further believe that apparently W. H. Brabston intended to kill Lanier or do him great bodily harm, then Lanier had the right to defend himself, and W. F. Brabston had the right to defend him against the deadly purpose and imminent danger. We are of opinion that the instructions for the prosecution on the question now under consideration were erroneous, but, if they were abstractly not erroneous, they should have been qualified by such instructions as said two asked by the defendant, and guided by correct instructions, the jury should have reached a conclusion between manslaughter and justifiable homicide, and their verdict made to accord with that conclusion.

Another important question is raised by the ninth and tenth instructions for the state. The ninth develops it thus: "If the jury believe from the evidence that the defendant voluntarily brought on a difficulty or shooting with deceased, and thereby caused other persons to take part in the unlawful affray in which deceased was killed, the defendant was guilty of murder, although he may not have fired the fatal shot." The tenth adds: "If the jury believe from the evidence that the deceased and Lanier were mutually engaged in an unlawful combat, and that the defendant, not being in real or apparent danger as to his life or person at the hands of either of the combatants, voluntarily took part in the combat with a deadly weapon, and believe that the defendant

thereby caused a deadly affray with deadly weapons between himself, the accused and others, in which affray the deceased was shot and killed, it is immaterial who fired the fatal shot, the defendant is in law responsible for the killing, and the jury, if they believe from evidence that such were facts in this case, should find the defendant guilty of murder or manslaughter." Defendant met those instructions by asking the following, which was refused : "No. 23. If the jury upon the evidence have a reasonable doubt as to whether the shot that killed the deceased was fired by defendant or some one else they should acquit." We cannot concur in the trial court's ruling on these instructions. We recognize that if two or more agree to kill another person or do him great bodily harm, and designedly and knowingly co-operate in an effort to accomplish that common purpose, and, in executing that purpose, one of them kill him, all are principals in the homicide, and equally liable in law for it ; but we do not hold the doctrine that if two men fight in a crowd, with or without deadly weapons, and some outsider, without concert with or knowledge of either of the two combatants, fire at and kill one of them, as his prejudice or prepossession may prompt, the survivor is responsible in law for the homicide. In such a duel neither party to it contemplates or expects such an interference by others, and most probably did not know of it before or at the time of the fight, and it never came within the contemplation or expectation of either as a result of his combat. In such cases the man who interferes takes the consequences of his act, and he is guilty of a crime unless he can justify his act on lawful grounds applicable to himself. We disclaim the doctrine of Judge Green, in *Beets* v. *State*, Meigs, 106, and overrule the action of the circuit court on the instructions last referred to, not only because we think these are erroneous in law, but also because said Tennessee case has been since overruled by the supreme court of Tennessee, and we refer to the following cases : *Manier* v. *State*, 6 Baxt. 595 ; *Tharpe* v. *State*, 13 Lea, 138. And in further support of our conclusion, we cite the case of *Commonwealth* v. *Campbell*, 7 Allen, 541, and also the following cases in our own supreme court : *Peden* v. *State*, 61 Miss.

267 ; *Lusk* v. *State,* 64 Ib. 845 ; 2 South. Rep. 256.   And from
Alabama, *Frank* v. *State,* 27 Ala. 37 ; *Jordan* v. *State,* 79 Ib. 9.

The testimony offered by defendant to prove what he said at the
house of Mrs. Goff was, we think, properly ruled out.   As to the
evidence offered by defendant to prove his whole statement at the
pavilion immediately after the fight ended, which was ruled out by
the court, if the matter sought to be proved was part of the same
conversation stated by a witness for the state, defendant was enti-
tled to bring out the whole statement by other witnesses, if neces-
sary, or if as to that the witnesses for the defense differed from those
of the state, he was entitled to the counter-testimony, in order that
the jury might consider and weigh the testimony of both ; and he
was entitled to this at the time it was offered, because the state
introduced no. part of that statement until after defendant had
closed his testimony in defense and rested.   The evidence that de-
fendant offered, relative to the pistol picked up near the place where
the conflict ended, should have been admitted.   That pistol, and
the state's evidence relative to it, was not in the case before the
jury until after the defendant had closed his proof and rested ; and,
when offered, defendant objected, but the court overruled him.   He
was then entitled to rebut these by proof.

*Reversed and remanded.*

HON. TIM E. COOPER, one of the judges of the supreme court,
being disqualified to sit in this case by reason of relationship by
affinity to appellant, Mr. David Shelton, a member of the bar, was
selected by agreement of counsel, under the constitution, to preside
in place of Judge Cooper.