WILLIAM C. SULLIVAN *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Murder. Conspiracy. Instruction.*

The principle that where parties combine to commit crime the law imputes the guilt of each to all thus engaged and holds all to be guilty of any crime committed by either in the execution of the common purpose is founded upon the idea that a common intent to do some unlawful act existed in the minds of the parties prior to the commission of the crime which results from the combination; hence an instruction which seeks to apply the principle in the absence of evidence of such common intent to do an unlawful act is erroneous.

2. SAME. *Self-defense.*

Where in a murder case the defense is not predicated of self-defense it is erroneous to give an instruction to the effect that self-defense can only be availed of under certain circumstances of which there was no evidence.

3. SAME.

On prosecution for murder in a difficulty between deceased and defendant and his son, an instruction authorizing conviction if the son killed deceased, not in necessary self-defense, if defendant aided in such killing, though deceased provoked the difficulty with defendant or the son, provided deceased was fighting with his hands only, was erroneous.

FROM the circuit court of Smith county.

HON. JOHN R. ENOCHS, Judge.

William C. Sullivan (commonly called Bill Sullivan), the appellant, and Andrew Jackson Sullivan (commonly called Jack Sullivan), father and son, were jointly indicted for the murder of Wilson Sullivan, a brother of appellant. A severance was had, and appellant separately tried, convicted, and sentenced to the penitentiary for life, from which conviction and sentence he appealed to the supreme court. The facts are stated in the opinion of the court.

*W. H. Hughes,* and *McIntosh Bros.,* for appellant.

All the evidence in this case taken together is not sufficient to sustain a verdict of guilty. There is no testimony anywhere in the case showing that appellant ever struck deceased or ever aided or abetted or encouraged A. J. Sullivan to strike him; no testimony showing or tending to show that appellant had the least intimation or idea from any source that A. J. Sullivan there in the dark was making a deadly assault with a knife upon deceased; no testimony showing or tending to show that appellant was armed with a deadly weapon. On the contrary, appellant's uncontradicted testimony is to the effect that he did not touch deceased, did not aid, encourage, or abet the killing in any manner, and did not know that A. J. Sullivan was cutting deceased until after the difficulty was over, when they had started home and Jack told him; that he cherished no malice toward his brother, but, on the contrary, loved him better than any of his other brothers. Under the facts, the court should have sustained the motion of the defendant to suppress the testimony and for a verdict of not guilty.

The first instruction given for the state is erroneous because it tends to center the minds of the jury upon a question not in issue—viz., whether or not Wilson Sullivan was killed in self-defense. The same error occurs in instructions 3, 4, 5, and 6 given for the state. *Spradley* v. *State,* 31 South. Rep., 534; *Layton* v. *State,* 56 Miss., 791; *Parker* v. *State,* 55 Miss., 414.

Instructions 1 and 3, if proper at all, are too narrow. Accused certainly had a right to defend the person of his son, A. J. Sullivan, if there was a reasonable ground to apprehend a design on the part of deceased to do the son some great personal injury. Code 1892, § 1152.

Instructions 1, 2, 3, and 4 have no bearing upon this case, do not enlighten the jury as to the law on the issues involved, and should not have been given.

The fifth instruction tells the jury that if either one of the parties (meaning appellant or A. J. Sullivan) sought and pro-

voked a difficulty with Wilson Sullivan, armed with a deadly weapon, intending to use it in such a difficulty if it should become necessary to overcome Wilson, and the other of the accused—that is, Bill or Jack—was present for the purpose of encouraging, aiding, or abetting such party in executing such intention, they are equally guilty under the law. Mark the words "present for the purpose."

It is not enough that defendant be present and have in his mind a felonious purpose. This does not constitute in any case the crime of murder. According to this instruction, defendant may have been present, and his purpose for being present may have been to aid, assist, or encourage the commission of the crime. Yet he would not necessarily be guilty of murder. He must affirmatively abet, assist, or encourage the act. He cannot be guilty of murder unless he does something that causes or helps to cause the murder. The formed purpose in his mind is not the crime. *State* v. *Cox,* 65 Mo., 29; *State* v. *Douglas,* 44 Kan., 626; *White* v. *People,* 32 Am. St. Rep., 196; *Burrel* v. *State,* 18 Tex., 713; *Watson* v. *State,* 28 Tex. App., 34.

*J. N. Flowers,* assistant attorney-general, for appellee.

There was no necessity for the killing, and it was a crime. Whisky was the cause of it, no doubt. The evidence is sufficient to support the verdict.

It is true, as a proposition of law, that if Jack Sullivan killed Wilson Sullivan under circumstances which made the killing murder, and this appellant was present for the purpose of aiding and abetting, he is guilty also. Presence and intention to aid is participation. *McCarty* v. *State,* 26 Miss., 299; *Wynn* v. *State,* 63 Miss., 260.

Argued orally by *W. H. Hughes,* and *D. A. McIntosh,* for appellant, and by *J. N. Flowers,* assistant attorney-general, for appellee.

TRULY, J., delivered the opinion of the court.

W. C. Sullivan and A. J. Sullivan were jointly indicted for murder. Appellant was tried separately, convicted, and appeals.

The fifth instruction for the state is as follows: "The court instructs the jury that it is not necessary that a previous conspiracy between Bill and Jack Sullivan should have been formed in order that both of the parties, Bill and Jack Sullivan, might be guilty of the crime charged against them in the indictment. For if either one of them sought and provoked a difficulty with Wilson Sullivan, armed with a deadly weapon, intending to use it in such difficulty if it should become necessary to overcome Wilson, and the other of the accused—that is, Bill or Jack—was present for the purpose of encouraging and aiding or abetting such party in executing such intention, they are equally guilty under the law; and if such difficulty was provoked, and a knife, a deadly weapon, was used by Jack Sullivan in such difficulty, and Wilson Sullivan killed, not in necessary self-defense, then Jack Sullivan and any one so present encouraging or aiding or abetting him are guilty as charged." This instruction was not applicable to the facts of the case, and the proposition of law which it was intended to announce was incorrectly stated. The testimony, considered as a whole, so far as disclosed by a most meager record, shows: Appellant and deceased, Wilson Sullivan, were brothers. On the night of the fatal difficulty a social gathering was held at the residence of the deceased, to which appellant, his family, and other neighbors were invited. While there, several of the guests engaged in convivial drinking, the appellant, at least, to excess. There was no evidence of any bad feeling existing between appellant and deceased that night. The last words uttered by appellant before leaving the house were in returning thanks to the family of his host for their hospitality. He then rode off in the direction of his home, and had proceeded some distance, probably three hundred yards, down the road, when he came

to where the deceased and one or more men were standing. Here a difficulty arose between appellant and deceased, the actual details of which are very vaguely stated in the record. It is beyond dispute, however, that at the time the fight between appellant and deceased began, and for some minutes thereafter, A. J. Sullivan, the son of the appellant, was not present at the scene of the difficulty, not having left the yard gate of the premises of the deceased, and that he did not go to the place of the difficulty until he had been notified of what was transpiring and who were engaged in the fight, when, remarking that he would take his "keen cutter" and go down and settle it, he rode rapidly down the road to where his father· and the deceased were engaged in a fisticuff, took part therein on behalf of his father, and stabbed and mortally wounded Wilson Sullivan, the deceased. It does not appear with any degree of certainty that either appellant or deceased was armed with any weapon, or that either intended or endeavored to inflict any serious injury upon his adversary. The testimony of the only witness actually present at the commencement of the difficulty, and who left immediately after it started and before A. J. Sullivan arrived upon the scene, was to the effect that the difficulty was provoked by Wilson Sullivan, the deceased, and that he knocked or shoved appellant down at the very commencement of the fight. Nor is there any direct evidence upon which to base a conclusion that appellant expected his son, A. J. Sullivan, to take part in the difficulty, nor that A. J. Sullivan knew or had any reason to suspect that his father would meet with Wilson Sullivan on the road, or that he intended, if he did meet him, to engage in a difficulty with him. Under this state of facts it was error for the court to submit to the jury an instruction which authorized them to find that A. J. Sullivan had provoked a difficulty with Wilson Sullivan or that appellant was armed with a deadly weapon which he intended to use in such difficulty if it should become necessary to overcome him, for the reason that there is no evidence that A. J. Sullivan provoked a dif-

ficulty with Wilson Sullivan or that appellant was armed with
or intended to use a deadly weapon in such difficulty. If there
existed no previous understanding between Bill and Jack Sulli-
van, no common design to commit any unlawful act, this pre-
supposes independent action on the part of each; therefore, even
if one of the parties did provoke a difficulty with Wilson in
the manner and for the purpose indicated by the instruction,
"the other of the accused" could not have been present "for the
purpose" of encouraging and aiding or abetting such party in
executing "such intention." In the absence of a common pur-
pose, one party could not know the intention of the other, and
could not be present for the purpose of assisting in the execution
of a plan to which he was not a party and of which he was in
ignorance. This instruction is therefore not only not applica-
ble to the facts of the case, but is contradictory in its terms.

The proposition of law controlling, and which it was sought
by the instruction under review to present to the jury, and
which the state invokes as applicable to this case, is stated in
*Lusk* v. *State,* 64 Miss., 850 (2 South., 257), as follows:
"Where parties combine to commit crime, the law imputes the
guilt of each to all thus engaged, and pronounces all guilty of
any crime committed by any in the execution of the common
purpose, as one of its natural and probable consequences, even
though none of the parties intended at the outset to do the
particular thing constituting the crime." So, again, it is stated:
"If two or more combine to do an unlawful thing, and the act
of one, proceeding according to the common plan, terminates
in a criminal result, though not the particular result intended,
all are liable." *Peden* v. *State,* 61 Miss., 270. But this prin-
ciple is founded upon the idea that a common intent to do some
unlawful act must exist in the minds of the guilty actors prior
to the commission of the crime; it need not be that the design
is to commit the particular crime which is subsequently com-
mitted, but there must be a preconcerted plan to do some un-
lawful act. A common purpose being shown, all are guilty

and are held liable for the acts of any one of his confederates committed in pursuance of such purpose, even though not included in the original plan. If W. C. Sullivan and his son, A. J. Sullivan, had combined to commit any unlawful act on Wilson Sullivan, and in endeavoring to carry such design into execution Wilson Sullivan met his death, then both Bill and Jack Sullivan were guilty of murder. And this would be true even though at the outset neither had intended to take his life, under the reason of the rule stated above.

So, again, if W. C. Sullivan, of his malice aforethought, intending to compass the death of Wilson, provoked a difficulty in the progress of which he incited his son Jack to slay Wilson, then W. C. Sullivan would be guilty of murder, though Jack, in the absence of a previous agreement, would be guilty of manslaughter only. But if there was no preconcerted plan between appellant and his son to commit any unlawful act toward or inflict any injury on Wilson Sullivan, and if the difficulty between appellant and deceased arose upon a mere chance encounter, occurring without previous concert or intention on the part of either, in which neither intended nor sought to take the life of his adversary, and Jack Sullivan recklessly and unnecessarily slew deceased, this would not render appellant guilty of murder, because in such state of case there would exist on his part no intention to commit murder nor to intentionally incite its commission by another. And this would be true, no matter if appellant was the aggressor in the fist fight in which he was engaged with deceased. But the instruction now being considered is not based on any one of these propositions. It permits the jury to convict each of the actors for the act of the other, though each acted independently and without the knowledge of his co-actor. Under the state of facts here presented, the controlling principle of law is stated in *Brabston* v. *State,* 68 Miss., 219 (8 South., 328), as follows: "We recognize that if two or more agree to kill another person or do him great bodily harm, and designedly and knowingly

coöperate in an effort to accomplish that common purpose, and, in executing that purpose, one of them kill him, all are principals in the homicide, and equally liable in law for it; but we do not hold the doctrine that if two men fight in a crowd, with or without deadly weapons, and some outsider, without concert with or knowledge of either of the two combatants, fire at and kill one of them, as his prejudice or prepossession may prompt, the survivor is responsible in law for the homicide. In such a duel neither party to it contemplates or expects such an interference by others, and most probably did not know of it before or at the time of the fight, and it never came within the contemplation or expectation of either as a result of his combat. In such cases the man who interferes takes the consequences of his act, and he is guilty of a crime, unless he can justify his act on lawful grounds applicable to himself." See also *Jones* v. *State,* 70 Miss., 405 (12 South., 444). This enunciation is strikingly applicable to the case at bar. If appellant and deceased were engaged in a mutual combat engendered by a chance controversy, without premeditation on either side, neither intending, nor probably desiring, to inflict any great injury upon his adversary, neither armed with any weapon capable of producing death, and if into this conflict A. J. Sullivan, the son of the appellant and nephew of deceased, precipitates himself, without any previous understanding with appellant, armed with a deadly weapon, and slays the deceased, under such circumstances it would be monstrous and shocking to the sense of justice to hold the appellant responsible for the deed committed by his son, whose assistance he had not expected and whose act he neither desired nor could foresee. As to the degree of guilt of A. J. Sullivan, it is not necessary to discuss, he having been by death summoned to answer, for the deeds done in the body, at the bar of justice of a higher tribunal. It is not enough to justify the conviction of appellant for murder to show that he was engaged in a combat with deceased, in the course of which murder was committed by his son. It must further be

shown that such murder was intentionally incited in some way by the appellant, or that it was committed in pursuance of a common design. In the case of *Woolweaver* v. *State,* 50 Ohio St., 277 (34 N. E., 352; 40 Am. St. Rep., 667), a case of practically identical facts, where the father, being engaged in a difficulty, has his adversary slain by his son, it is said: "Whenever a father engages in a fight, the tendency of that act is to incite a son, who may be standing by, to acts of violence, either toward the immediate antagonist of the father, should there be one, or toward the party of that antagonist, if there should be more than one. This tendency may be affirmed in respect to many other ties of kindred, or in many instances of merely close companionship. What rash or violent act the bystanding son, kinsman, or comrade may be moved to do, depends in a great measure upon the quality of his temper, the strength of his affection, and the notion, often mistaken, that he may hastily gather under the excitement of the moment, as to who is in fault and to be held responsible for bringing on the conflict. And if the bystanding son, other kinsman, or comrade should, of his own volition, by an independent act of violence, slay the antagonist, the party engaged in the fight should not be charged with this act merely because he was engaged in a conflict with the deceased, and in that way, but in that way only, incited the fatal act. This is not enough to show a criminal intention; something more must appear. He must have purposely incited or encouraged the party in that course of violence that led to the homicide, or done some overt act himself with a view to that result, and that in some degree contributed thereto." To the same effect see *Jordan* v. *State,* 79 Ala., 9; *Manier* v. *State,* 6 Baxt., 600; *Tharpe* v. *State,* 13 Lea, 143; *Hicks* v. *U. S.,* 150 U. S., 442; 14 Sup. Ct., 144; 37 L. ed., 1137.

The sixth instruction for the state is also fatally erroneous. It authorizes the jury to convict appellant if they believe that Jack Sullivan killed Wilson Sullivan, not in necessary self-defense, if the appellant aided, encouraged, abetted, or assisted

in such killing, even though they might further believe that Wilson Sullivan began or provoked the difficulty with Bill and Jack, or either of them, provided he was fighting Jack with his hands or fists only. It was tantamount to saying that one could provoke a difficulty and engage in a fight of which he was the aggressor, and if in the course of such fight he is killed by the party whom he unlawfully assaulted, that then any third person who might assist or encourage the party so assailed would be guilty of murder, even though he might not intend to slay or desire the one whom he was aiding to slay. We cannot imagine a state of case which would warrant the granting of such a charge to the jury. A man unjustly assailed has the right to defend himself, and if in defending himself he, in the heat of blood engendered by the combat, uses more force than is necessary in repelling such attack, he would be guilty of manslaughter, not murder. Under such circumstances it cannot be contended that a father who is assisted by a son in defending himself from assault, being himself unarmed, and not the provoker or aggressor in the difficulty, and with no previous understanding with his son, could possibly be justly convicted of murder. This was the legal effect of the sixth instruction for the state.

The third instruction for the state was, under the facts of this record, improperly granted; though, but for fatal errors pointed out in other instructions, we would not for this alone reverse; and it is mentioned to avoid a repetition of the error upon a subsequent trial. Appellant had not invoked, and his defense was not predicated on, the doctrine of self-defense, and an instruction telling the jury that self-defense could only be availed of as a defense under certain circumstances, which manifestly were not present in the case at bar, could have no good effect, and simply tended to lead the jury away from the vital points at issue.

The action of the court in refusing the instructions denied the defendant was correct. The fourth is plainly wrong. The

seventh and eleventh are on the weight of evidence. The second, third, and eighth are based on the erroneous assumption that appellant was entitled to an acquittal unless he aided or abetted Jack Sullivan with knowledge of his plan to "kill and murder" deceased and with the intention of compassing such killing. The real inquiry on this phase of the case, as the record is here presented, is whether deceased came to his death in the prosecution on the part of appellant and Jack Sullivan of a common design to commit an unlawful assault upon him. If this inquiry be answered affirmatively, appellant is guilty of murder, without reference to the exact nature of the unlawful act which they intended to commit. And this is true even though Jack Sullivan alone actually committed the homicide in pursuance of such common purpose, if appellant was present aiding, abetting, or inciting such killing by word or deed. The correctness of this last proposition was recognized by the trial judge in his correct modification of the instruction marked "No. 9" granted appellant.

We deem it unnecessary to discuss in detail the other assignments of error presented.

As the errors which necessitate a reversal hereof all flow from the application of a wrong principle of law to the facts as they appear to us in this obscure record, and as we have hereinbefore indicated the true course to be followed, we think this sufficient for the guidance of the court on another trial hereof.

*Reversed and remanded.*