## Jennie Moore v. The State.

### No. 6686.  Decided February 15, 1922.

**1.—Murder—Justifiable Homicide—Rape—Attempted Rape—Requested Charge.**

Where, upon trial of murder, the defense's testimony showed that the defendant caught the deceased in the act of having one arm around defendant's daughter and the other hand under her clothes, and that he was about to commit sexual intercourse upon her, she being under the age of 18, and that defendant killed the deceased to prevent the attempted rape, the requested charge on that phase of the case should have been submitted, although it was not in proper form.  Following Joy v. State, 57 Texas Crim. Rep., 102, and other cases.

**2.—Same—Evidence—Cross Examination—Suspended Sentence.**

Where, upon cross-examination of the defendant, she was asked by the prosecuting attorney if it was not a fact that she had pulled J. Vinson's hair, which she denied, whereupon the State called said Vinson as a witness and he testified that some six or seven years before the trial, defendant had pulled his hair.  This testimony was inadmissible, and could not be used under a plea of suspension of sentence.

**3.—Same—Reputation—Rule Stated—Suspended Sentence—Specific Acts.**

The suspended sentence law has not changed the rule touching the manner of proving general reputation, and under the general rule proof of reputation cannot ordinarily be made by specific acts.

Appeal from the District Court of Tyler.  Tried below before the Honorable D. F. Singleton.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Dies & Wheat,* for appellant.—On question of general reputation: Baker v. State, 221 S. W. Rep., 607; Wagley v. State, 224 id., 688.

On question of justifiable homicide: Surges v. State, 225 S. W. Rep., 1104; Richardson v. State, 7 Texas Crim. App., 486.

*R. G. Storey,* Assistant Attorney General, for the State.

MORROW, Presiding Judge.—The conviction is for murder; punishment fixed at confinement in the penitentiary for a period of five years.

The deceased, Ellis Johnson, was shot and killed while in the house occupied by the appellant, her husband and daughter.

To state's witnesses entering the house immediately after the shot was fired, appellant said: "I think he is dead.  I think I gave him a good shot;" that she also said she "had killed a man in defense of her baby child."  The wound indicated that the shot had entered on one side and come out on the other, probably piercing

the heart. To an officer, appellant said: "How soon could I get that hound out of my house;" that she desired to do so as soon as possible.

The deceased was a divorced man, about thirty-three years of age. There is considerable testimony with reference to why the deceased married his first wife and caused a divorce.

Appellant testified that she was about fifty years of age; had been married twenty-nine years; that she had six children, three of whom were still living; that only her daughter, Nell, was present at home at the time of the homicide; that at the time her daughter was seventeen years old; that deceased was paying her attention; that she caught the deceased with one arm around her daughter and the other hand under her clothes, and that this was the condition at the time she killed him.

As we understand her testimony, she was in an adjoining room to the parlor and the door was opened. The deceased and the girl were in the parlor. She noticed that everything was quiet and looked into the room and saw the deceased and her daughter in the position named; that upon seeing him, she walked right up to him and shot him, saying to him: "You have ruined my girl, have you?" and did not wait for an answer; that her daughter screamed: "You have killed him, don't kill me." When appellant shot him, she told him: "I caught you ruining my daughter."

Appellant advances the proposition that her daughter being under eighteen years of age, an issue was raised as to whether she killed the deceased to prevent the offense of rape; and special charges were presented and refused seeking to present this theory of the law to the jury. With certain limitations, the rule seems to be general that a homicide may be justifiable when committed to prevent the commission of a felony by violence. Cyc. of Law & Proc., Vol. 21, p. 827; Fletcher v. Commonwealth (Ky.), 83 S. W. Rep., 588; Brabston v. State, 68 Miss. 208; State v. Clark, 134 N. C., 698; Monson v. State, 63 S. W. Rep., 647; Leslie v. State, 42 Texas Crim. Rep., 65; Glover v. State, 33 Texas Crim. Rep., 224; Cunningham v. Neagle, 135 U. S., p. 1. The right to prevent the commission of a felony is not confined to one against the person but may be applicable to one against property. Cyc. of Law & Proc., Vol. 21, p. 830; Sims v. State, 36 Texas Crim. Rep., 154; 38 Texas Crim. Rep. 637; Laws v. State, 26 Texas Crim. App., 655; Surges v. State, 88 Texas Crim. Rep., 288, 225 S. W. Rep., 1104; Gerard v. State, 78 Texas Crim. Rep., 300; Newman v. State, 58 Texas Crim. Rep., 446; 21 Amer. & Eng. Ann. Cas., p. 718; Joy v. State, 57 Texas Crim. Rep., 102.

The application of the principle to facts such as are revealed in the present record has not been made so far as we are aware. In this state, we have a statute which declares that homicide is permitted by law when inflicted for the purpose of preventing the commission

of several named offenses, including rape. Penal Code, Art. 1105. From that statute, we quote subdivisions 1, 2 and 3 as follows:

"(1)   It must reasonably appear by the acts or by words, coupled with the acts of the person killed, that it was the purpose and intent of such person to commit one of the offenses above named.

(2)   The killing must take place while the person killed was in the act of committing the offense, or after some act done by him showing evidently an intent to commit such offense.

(3)   It must take place before the offense committed by the party killed is actually completed; except that, in case of rape, the ravisher may be killed at any time before he has escaped from the presence of his victim, and except, also, in the cases hereinafter enumerated."

One of the phases of rape is defined by our statute as:

".   .   .   the carnal knowledge of a female under the age of eighteen years, other than the wife of the person, with or without her consent, and with or without the use of force, threats or fraud. Provided, that if the woman is fifteen years of age or over, the defendant may show in consent cases, she was not of previous chaste character as a defense. (Penal Code, Art. 1063, amended by Act of Leg., 1918, 4th Called Session, Chap. 50, Sec. 1.)

Rape is a capital offense, and this phase of rape has also been construed to include the offense of assault with intent to rape, which is also a felony. Penal Code, Art. 1029; Cromeans v. State, 59 Texas Crim. Rep., 622. It would seem, therefore, that homicide to prevent rape would come within the purview of Article 1105, supra. If this be true, then if it reasonably appeared to the appellant, from the acts of the deceased, that it was his purpose and intent to commit rape, and that some act had been done showing evidently such intent, a homicide in preventing it would not have been unlawful if, viewed from the standpoint of the person committing the homicide, the necessity therefor was made reasonably apparent. Joy v. State, 57 Texas Crim. Rep., 103. We believe, in view of the evidence that it was the right of the appellant to have the jury informed in substance in accord with the views there expressed. They embrace the only defensive theory that the evidence revealed. The commission of the homicide by the appellant was conceded. The mitigating feature of manslaughter was involved and submitted to the jury, but the only theory upon which she could have been justified was, as viewed from her standpoint, that the homicide was necessary to prevent the offense of rape upon her daughter. While special charges were presented, we do not regard them as accurately presenting the law, but since the issue was not embraced in the court's charge at all, they were adequate to call attention to the omission and to bring up for review the refusal to supply them.

On cross-examination of the appellant, she was asked by the prosecuting attorney if it was not a fact that she had pulled Jim Vinson's hair. This she denied. Later, the state called Vinson as a

witness and he testified that some six or seven years before she had pulled his hair. Other than giving this testimony in rebuttal, the witness Vinson is shown to have been in no sense connected with the transaction involved in the trial of this case. Exception was reserved to the action of the court in permitting the question and in permitting the impeachment. An attempt was made to justify the procedure upon the ground that the issue of suspended sentence was involved. It seems to have been wholly immaterial whether she pulled Jim Vinson's hair or not. The objection should have been sustained to the testimony upon that ground, and Vinson's testimony should have been rejected because it was an effort to impeach upon an immaterial issue. The issue of suspended sentence permits proof of reputation, but it does not ordinarily permit proof of specific acts. The passage of the law did not change the rule touching the manner of proving the reputation. Williamson v. State, 74 Texas Crim. Rep., 290; Baker v. State, 87 Texas Crim. Rep., 305; Wagley v. State, 87 Texas Crim. Rep., 504; 224 S. W. Rep., 688. We do not think the jury would have refused to suspend the sentence because six or seven years before the homicide the appellant had pulled Jim Vinson's hair. The evidence should not have been received, but its admission, we would not require reversed. We advert to it merely to avoid its repetition upon another trial and to emphasize our previously expressed view that the application for a suspended sentence does not nullify the rules pertaining to proof of reputation nor obviate their observance.

Because of the denial of what we conceive to have been a substantial right of appellant to have the jury instructed pertaining to the substance of Article 1105, supra, as applied to the prevention of rape, we deem it our duty to order a reversal of the cause and that it be remanded for another trial. This is accordingly done.

*Reversed and remanded.*