**Larry Kenneth McKEE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–89–00121–CR.

Court of Appeals of Texas,
San Antonio.

Feb. 28, 1990.

Rehearing Denied April 3, 1990.

**922**

Robert E. Kozlowski, Sr., San Antonio, for appellant.

E. Bruce Curry, Kerrville, for appellee.

Before BUTTS, CHAPA and BIERY, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a conviction for murder. The jury found appellant guilty and assessed punishment at life imprisonment and a fine of $5,000.00.

Appellant advances two points of error. We overrule both arguments: that the evidence is insufficient to support the conviction and that the trial court erred by not submitting a charge to the jury on the theory of self defense.

At the guilt/innocence phase of trial there was testimony from several law enforcement officers. Bandera County Deputy Sheriff Milton W. Kaiser, Jr. testified that about 7:00 p.m. on August 21, 1988, he was actively seeking a reported suspicious vehicle, a 1978 burgundy Chrysler Cordova. He was in his patrol car south of Medina on Hwy. 16, when he saw the wanted automobile on FM Rd. 2107. Kaiser immediately notified fellow Deputy Sheriff Joe Rodriguez II. Kaiser arrived after Rodriguez had stopped the Chrysler and had appellant at the rear of that car.

The lawmen had been looking for two men in the Chrysler since Rodriguez had been advised by a local citizen, Tommy Adams, that two suspicious persons in that car were asking directions to a certain ranch, the Lloyd Ranch. Adams reported the make of the car and that it had Oklahoma license tags. Because Rodriguez smelled alcohol on appellant, who was alone in the vehicle, he asked appellant to step out of the car. He then determined that appellant's driver's license from Alabama had been suspended.

When Kaiser arrived, he asked appellant "where his friend was." He testified that appellant told him Wright had gotten out of the car and run. Kaiser looked into the automobile, where he saw the butt of a gun sticking out from a towel on the passenger side of the front seat. He retrieved the five shot revolver and saw that all five cartridges were spent. It is undisputed that this was appellant's gun and that appellant killed Gerald Wright.

Kaiser testified that many items were scattered about the automobile. Among those were a wallet and "a bunch of papers" belonging to the deceased, as well as money and items of clothing and shoes scattered about. Also found were a .22 caliber pistol in a box and a pocket notebook with appellant's name on it. The notebook contained a sketch of a map showing the location of the Lloyd Ranch, the automobile being stopped about twelve to fifteen miles from the ranch. Appellant

was given his *Miranda* rights.[1]

According to Rodriguez, appellant told him that "Wright had jumped out of the vehicle and headed up toward the Lloyd Ranch to pick up the vehicle." He said that later, however, appellant changed his statement and said appellant had fired the pistol ("fired some rounds"), that there had been a struggle between the two, and that Wright had tried to "rape" appellant. Rodriguez emphasized that appellant told him two different stories. The first was that Wright had gone to pick up a truck on the Lloyd Ranch which appellant was purchasing, and presumably was following on the road behind appellant. The second story was that Wright had tried to rape him and that he shot Wright. Based on the first version, a suspicious vehicle lookout for a tan Ford or pickup was dispatched to other officers.

Appellant subsequently told Rodriguez that Wright was driving the Chrysler when suddenly Wright "grabbed" appellant's penis. The car had come to a near stop, he said, due to car trouble. Appellant, a 50-year-old man, was wearing only shorts with a .38 caliber gun in his back pocket and was barefooted. He said he left the barely moving car and ran. He said Wright chased him. Wright was barefooted but otherwise fully dressed. Appellant told the officer that Wright caught him, and they struggled. It was shown that Wright weighed only 135 pounds. Appellant then shot Wright five times. He told the officer he "jumped in the car and headed toward Medina." Appellant told the officer he was going to stop and report the shooting after he got back to Bandera. It was shown that he would first travel through Medina before arriving at Bandera, which was several miles farther. In his first version, appellant told Rodriguez that it was Wright who first got out and ran from the car, and that the shots were fired at Wright as he ran.

James McMillan, an investigator with the Texas Narcotics Task Force, testified that three bullets were recovered from the body at the autopsy. There were five bullet wounds and two exits holes. The bullets and shells were introduced into evidence. McMillan said appellant related to him that it was Wright who jumped out of the car and ran. Appellant said he pursued Wright, and the two men got into a fight. Appellant told McMillan he pulled the pistol from the back pocket of his shorts, and while running away from the deceased, he shot over his shoulder. He then ran to the car and left the scene.

Dr. Tommy Brown from the Bexar County Medical Examiner's Office testified that one bullet went straight across the midline of Wright's back. "The gun barrel was placed against the back when it was fired." He verified this shot in the back was a contact wound. Another bullet traveled up and angled; thus, he said, the deceased could have been on the ground when that bullet entered, or the shooter could have been lying down and shooting up. The same was true of the next bullet which also went upward and back. In none of appellant's versions was he lying on the ground. It was the bullet which damaged the aorta that probably caused death. Two of the bullet wounds displayed little bleeding, indicating death had already occurred when the last two bullets entered.

Texas Ranger Joe Davis testified that appellant told him he met the deceased in Del Rio after appellant was released from jail. Appellant was arrested at the border check from Mexico because license tags on the 1984 Mercedes automobile he drove did not belong to it. It was shown that appellant drove a "friend's" car without permission from South Carolina to Mexico after he had removed the original tags and replaced them with ones he stole. Appellant told Davis he met another inmate in jail and that the prisoner offered to sell him a pickup for $500.00. According to appellant, the vehicle was located on the Lloyd Ranch and he agreed to purchase it. Appellant told Davis that he met Wright at a

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

motel, and Wright agreed to drive appellant to the ranch to get the pickup. Davis determined that, in fact, the pickup did not exist.

Before Ranger Davis took a written statement from appellant, he and other officers, accompanied by appellant, attempted to locate the body of Wright. He said appellant reported he could not remember where the body was, and he led the officers all around the area. The Ranger said that appellant always led the searchers away from the body, which was not located for several days. It was a father and son who came upon it in an isolated place at the north fork of the Medina River, face down in water.

Davis read the statement into evidence without objection. It outlined how appellant met the deceased and their coming to Bandera County. It stated they became lost after buying some gas and beer, and they asked Tommy Adams for directions. Wright was driving the Chrysler when they came to a dirt road. The statement continued:

> All of a sudden Gerald went bazerk (sic) and started pulling his shoes and socks off. He was pulling things out of his pockets and throwing them in the car. He said he wanted my *body or something like that and then grabbed my penis.* (emphasis added) The car had quit running and was coasting down the road. I pushed Gerald away and jumped out of the car. I ran off to my right into a very shallow creek. Gerald caught me from behind and was holding on to me and tried to grab my penis again.
>
> I tried to get away from him but couldn't. I remembered I had a pistol in my right back pocket. I was able to get it out and started shooting back toward Gerald. Gerald had let loose. I shot back at him until the gun was empty. It holds five shots.
>
> I then ran back to the car. I didn't know where Gerald was or if I had hit him. I turned right and was headed back to the drivein service station where we bought

beer. I was going to report what happened to the police. I got stopped before I got to the service station by a Deputy Sheriff who arrested me.

\*     \*     \*     \*     \*     \*

Appellant testified at trial. He said that after they drove a mile or two in the dirt road, "all of a sudden Mr. Wright started screaming and he pulled his shoes and socks off and throwed them in the back ... just screaming, just hollering, and then he started pulling stuff out of his pockets and throwing all over the place ... after he got through pulling his stuff and throwing it on the floor, or all over the car, *he reached and grabbed me ... by the penis again."* (emphasis added)

Appellant testified he jumped from the Chrysler and was pursued by Wright. "He was behind me and *he put his arms around like that with his hands down there ... my penis ... yes, sir, he touched it."* (emphasis added)

> I was trying to elbow, trying to get loose, move my arms, and I finally broke away and when I went forward I happened to think I had that pistol in my pocket and I pulled it out and I guess shot backwards just like that. I didn't even look or nothing, and then after I got through firing I ran back to the car and looked in there and the keys was still in there and I turned around right there on that spot and came back out.

Appellant said he was going to the service station on the main road because that was the only place he knew to go and that he was "in a state of shock." He denied that he had led the deceased to believe "he could do that." He denied his intent had been to rob the deceased and to kill him, leaving the body in an isolated wilderness area, which was the State's theory.

When both sides closed at the guilt/innocence phase of trial, the trial court asked counsel for objections to the proposed jury charge. Defense counsel responded:

> We feel that we have met the burden of showing self-defense issue and that the

burden is now upon the State, as provided in several cases, which I would like to tender to the Court regarding self-defense and the burden then shifts to the State to disprove the fact that self-defense occurred out there, Your Honor. These are the leading cases from the most recent down through the years. It's our belief that we have raised an issue of self-defense, Your Honor, and we're moving that be included within the charge.

We also would ask leave of the Court ... for an instructed verdict in that the State of Texas has not met the burden of showing evidence sufficient to overturn the issue of self-defense in this case. There is no uncorroborated or any other evidence by the State of Texas presented to show that it was not self-defense upon the Defendant in regards to this incident and I believe that both case law that you have there, and request the Court to look it over, states that as a matter of law the trier of fact then has to find that the State has failed to meet its burden in overturning the issue of self-defense.

The trial court overruled the motion regarding the jury charge. Defense counsel stated that "the Court was provided a copy of it from McClung's as to what we urged as an issue of self-defense. I would like to also have the right to file a formal Bill of Exception in regards to this."

This ended the brief dialogue regarding a jury charge on self-defense. There is nothing further in the record from appellant. Article 36.14 of the Texas Code of Criminal Procedure provides in part:

> ... Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto in writing, distinctly specifying each ground of objection. Said objections may embody errors claimed to have been committed in the charge, as well as errors claimed to have been committed by omissions therefrom or in failing to charge upon issues arising from the facts, and in no event shall it be necessary for the defendant or his counsel to present special requested charges to preserve or maintain any error assigned to the charge, as herein provided. The requirement that the objection to the court's charge be in writing will be complied with if the objections are dictated to the court reporter in the presence of the court and the state's counsel....

Appellant argues on appeal that his general objection to the omission of a jury charge on "self-defense" was sufficient to preserve error. We do not agree. The Court of Criminal Appeals discussed article 36.14 in *Pennington v. State*, 697 S.W.2d 387, 390 (Tex.Crim.App.1985):

> This article is mandatory and there must be strict compliance with its provisions to warrant review [by the appellate court]. (citations omitted)

> The real purpose of this enactment is to enable the trial judge to know in what respect the defendant regards the charge as defective and to afford him an opportunity to correct it before reading the charge to the jury. (citations omitted)

> This article serves a statutory purpose in preventing the trial judge from being "sandbagged" and in preventing unnecessary reversals. (citations omitted) It is a statute which the courts can neither ignore nor emasculate. (citation omitted)

> Thus as a predicate for complaint to a jury charge on appeal the accused is required to distinctly specify each ground of objection. (citation omitted) To constitute a valid objection to jury instructions, the objection must be specific and clear enough to apprise the trial court of the nature of the objection. (citations omitted) *If the objection is not specific enough, nothing is presented for review.* (emphasis added) (citations omitted)

> It is clear then that a *general objection* which does not distinctly specify the claimed error in the charge is not sufficient to preserve error. (citations omitted) (emphasis added)

\*　　\*　　\*　　\*　　\*　　\*

An examination of the objection made by the appellant does not show that he distinctly specified to the trial judge (and to the record for appeal purposes) that he was objecting to the omission of a jury charge on self-defense *because the evidence showed that appellant used deadly force to prevent the imminent commission of sexual assault.* This is the "objection in writing" required by article 36.14 which must preserve any alleged error. The objection must be specific and complete within the record on appeal to preserve alleged error. This specific ground of objection to the omission is reflected for the first time in appellant's brief in this case. This kind of error presented on appeal must be the same as the objection raised before the trial court. *Pennington*, 697 S.W.2d at 390. As previously found, the objection was a general one that a jury charge on "self-defense" was omitted. There was no reference to sexual assault.

To clarify further, the justification chapter of the Texas Penal Code, chapter nine, demarcates many bases which may warrant the use of force. TEX.PENAL CODE ANN. § 9.31 (Vernon 1974) permits the use of force (but not deadly force) by a person against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. In the instant case the appellant *employed* deadly force. He argues on appeal his action was justified under section 9.32, which provides in part:

A person is justified in using deadly force against another:

(1) if he would be justified in using force against the other under Section 9.31 of this code;

(2) if a reasonable person in the actor's situation would not have retreated; and

(3) when and to the degree he reasonably believes the deadly use is immediately necessary:

\* \* \* \* \* \*

(B) to prevent the other's imminent commission of aggravated kidnapping, murder, *sexual assault,* aggravated sexual assault, robbery, or aggravated robbery. (emphasis added)

This appellate court does not have before it the "McClung's copy" of a charge, as a requested charge, nor was there any allusion to "the prevention of the imminent commission of sexual assault" in the article 36.14 objection as required.

■ Self-defense as an issue in a criminal trial must be connected to and arise from a unique reason granted by statute in Texas. In most self-defense situations when deadly force is used, the reason arises from section 9.32(1), (2), (3)(A)—"to protect himself against the other's use or attempted use of unlawful deadly force." Thus it is readily perceived why a specific basis for a self-defense jury charge must be presented when objection to the omission of such a charge is made. Article 36.14 mandates such specificity. There is nothing in the record to indicate appellant enunciated in his dictated "written objection" a specific and distinct basis for the self-defense charge which he asserts on appeal. Further, there are no refused instructions which have been certified and filed in the record. *See* TEX.CODE CRIM. PROC.ANN. art. 36.15 (Vernon Supp.1989). Appellant in the present case generally objected that a jury charge on self-defense had been omitted and did not distinctly specify that the jury charge on self-defense arose because of an imminent sexual assault on appellant.

■ If the statutory requirements of articles 36.14 and 36.15 of the Texas Code of Criminal Procedure are not met, the appellate court will reverse only if an error created such harm that the record shows that the defendant has not had a fair and impartial trial. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (opinion on rehearing); TEX.CODE CRIM. PROC.ANN. art. 36.19 (Vernon 1981); *Warren v. State,* 764 S.W.2d 906, 908 (Tex. App.—Corpus Christi 1989, pet. ref'd). The question is whether the evidence raised the

issue of an imminent sexual assault so as to justify the use of deadly force.

▮ We will examine the evidence to determine whether a jury charge on self-defense based on imminent sexual assault should have been submitted. If it should have been submitted, then we would determine whether appellant was harmed by its omission. *See Almanza*, 686 S.W.2d at 172. Sexual assault is defined in TEX.PENAL CODE ANN. § 22.011 (Vernon 1989):

(a) A person commits an offense if the person:

(1) intentionally or knowingly:

(A) causes the penetration of the anus or female sexual organ of another person who is not the spouse of the actor by any means, without that person's consent;

(B) causes the penetration of the mouth of another person who is not the spouse of the actor by the sexual organ of the actor, without that person's consent; or

(C) causes the sexual organ of another person who is not the spouse of the actor, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor....

\* \* \* \* \* \*

(b) A sexual assault under Subdivision (a)(1) of this section is without consent of the other person if:

(1) the actor compels the other person to submit or participate by the use of physical force or violence;

(2) the actor compels the other person to submit or participate by threatening to use force or violence against the other person, and the other person believes that the actor has the present ability to execute the threat; ...

\* \* \* \* \* \*

When appellant's statement and testimony are accepted as true, it is shown that the deceased said, or screamed, "I want your body," or "something like that." Appellant said that the deceased "grabbed" the penis of appellant at least two times. It is shown that the deceased "touched" appellant "down there." It was not shown that the deceased was nude or that his shirt and pants were discarded. In fact, the evidence showed that his pants were not. unzipped. The evidence further showed that appellant's shorts were not removed, nor was an attempt made to remove them. Therefore, the "grabbing" was through the material of the shorts. *It was not shown that the slightly built middle-aged deceased carried a weapon or threatened violence.*

Appellant relies on *Romero v. State*, 663 S.W.2d 121 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd). In that case, although the facts are not set out in the opinion, the evidence obviously gave rise to a jury charge on self-defense, including threats to take the life of the defendant, a woman, or to do her serious bodily injury, as well as her justification to use force against the other person to protect herself against the other person's use or attempted use of unlawful force. What was missing in that case was a jury charge on her justification to use deadly force to prevent rape. From the opinion it is clear there was sufficient evidence of attempted rape since the jury charge under section 9.31 specifically referred to the "attempted use of unlawful force, in this case rape." The error of that trial court was in not submitting that theory of self-defense pursuant to section 9.32 as required by that statute and as requested by the defendant, and not section 9.31, the application of which wrongfully precluded the use of deadly force by that woman defendant. Unlike the court in *Romero*, we find no evidence of rape or attempted rape.

At most the evidence in the present case shows an assault governed by TEX.PENAL CODE ANN. § 22.01 (Vernon 1989), which provides in pertinent part:

(a) A person commits an offense if the person:

(1) intentionally, knowingly, or recklessly causes bodily injury to another ...; or

(2) intentionally or knowingly threatens another with imminent bodily injury ...; or

(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

The above assault offenses are designated as misdemeanors. Since there was no testimony by appellant and no other evidence that the deceased caused bodily injury to him, or that he threatened bodily injury to appellant, the third defined assault would apply. "Grabbing" the penis of appellant and "touching" the organ through the clothing of appellant would authorize the application of that assault statute if appellant had not used deadly force. However, since the gun carried in the back pocket of his shorts was used, the court could not properly submit that charge as the evidence precluded it.

If no proper objection as required by article 36.14 was made at trial, as here, an accused will obtain a reversal only if the jury charge error is so egregious and created such harm that he has not had a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171. We have looked at the state of the evidence, and we find that the incident recounted by appellant in his statements to the officers, his written statement, and his own trial testimony did not rise to the level of a sexual assault or an attempted sexual assault as required for the use of a deadly weapon. TEX.PENAL CODE ANN. § 9.32 (Vernon 1974). Thus there is no error in the jury change of a "fundamental nature." We hold the trial court did not err in not submitting a jury charge on self-defense based on imminent sexual assault according to the definition of sexual assault. In this record there is no evidence that the use of deadly force by appellant was immediately necessary to protect himself against the imminent commission by the deceased of sexual assault. The second point of error is overruled.

The first point of error challenges the sufficiency of the evidence to support the conviction. When reviewing sufficiency of the evidence, this court is bound to review the evidence in the light most favorable to the jury's verdict. We must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Ibanez v. State*, 749 S.W.2d 804, 806 (Tex.Crim.App.1986); *see Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ Appellant relies upon *Palafox v. State*, 608 S.W.2d 177 (Tex.Crim.App.1980) for the proposition that the State is bound by its introduction of appellant's written statement and other exculpatory matters because it failed to disprove those assertions beyond a reasonable doubt. The rationale is that the evidence therefore is insufficient because the State failed to disprove that appellant was justified in using deadly force (shooting the deceased) to repel an imminent sexual assault by the deceased. We first rule that *Palafox* and other cases of like reasoning have been overruled by the enactment of TEX.R. CRIM.EVID. 607. *See, e.g., Ibanez*, 749 S.W.2d at 807, n. 3; *Samples v. State*, 762 S.W.2d 751, 753 (Tex.App.—Fort Worth 1988, no pet.). After the promulgation of rule 607, the State is no longer required to disprove exculpatory statements introduced by the State because the rationale, if any, has been destroyed by rule 607. *Samples*, 762 S.W.2d at 753.

■ We have earlier ruled that the evidence, exculpatory or otherwise, did not demonstrate an imminent sexual assault, as that offense is described statutorily in section 22.011 of the Texas Penal Code.

Applying the required standard of review, we find that any rational trier of fact could have found the essential elements of the crime of murder beyond a reasonable

doubt in this case. The evidence is sufficient to support the conviction.

The judgment is affirmed.

CHAPA, Justice, dissenting.

I respectfully dissent.

The majority opinion has concluded that appellant failed to preserve error by not making a specific enough request for an instruction of self defense to the trial judge; that the evidence did not raise the self defense issue because it "did not rise to the level of a sexual assault or an attempted sexual assault as required for the use of a deadly weapon"[1]; and that, therefore, "the trial court did not err in not submitting a jury charge on self-defense based on imminent sexual assault according to the definition of sexual assault". I disagree.

The Texas Court of Criminal Appeals has repeatedly held that if evidence from any source raises the issue of a defensive theory, it must be included in the court's charge, regardless of whether such evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of this evidence. A defendant's testimony alone is sufficient to raise a defensive issue requiring an instruction in the jury charge, regardless of whether appellant's testimony is based on beliefs which may appear unreasonable and unjustified or whether the appellant may have used what appears to be more force than necessary under the circumstances. These are fact questions which must be viewed from the standpoint of the defendant and which are more appropriately answered by the

jury and not by the trial judge in a trial by jury. *Hayes v. State*, 728 S.W.2d 804, 809 (Tex.Crim.App.1987); *Moon v. State*, 607 S.W.2d 569 (Tex.Crim.App.1980); *Warren v. State*, 565 S.W.2d 931, 933–34 (Tex.Crim. App.1978); *Ojeda v. State*, 712 S.W.2d 742 (Tex.Crim.App.1986); *Rodriguez v. State*, 544 S.W.2d 382 (Tex.Crim.App.1976).

In *Moore v. State*, 91 Tex.Crim. 118, 237 S.W. 931 (1922), the court held that a defendant sufficiently raised the issue of self defense with the use of deadly force to prevent the rape of another and was entitled to an instruction. The defendant had testified that she was in the adjoining room of the parlor of her home with the door open; that the deceased was visiting her 17 year old daughter in the parlor at the time; that when everything became too quiet, she walked into the parlor to find the deceased with one arm around her daughter and the other hand under her clothes; that she then walked up to the deceased and shot him, to prevent what she considered to be the offense of rape of her daughter.

In *Rodriguez v. State*, 544 S.W.2d 382 (Tex.Crim.App.1977), the court held that the testimony of the defendant raised the issue of self defense with the use of deadly force, which required that such an instruction be given. The defendant had testified that he was in a car with several friends when two police officers stopped the car for defective tail lights; that when he got out of the car, he observed Officer Lee push the driver and reach for his gun; that fearing that the officer was going to shoot the driver, he disarmed Officer Lee; that when the other officer fired at him, he proceeded to fire back at the other officer. Emphasizing that the issue was not the

---

1. The applicable statute is TEX.PENAL CODE ANN. § 9.32 (Vernon Supp.1990), hereinafter cited as "section 9.32 of the Penal Code," which provides in part:

A person is justified in using deadly force against another:

(1) if he would be justified in using force against the other under Section 9.31 of this code;

(2) if a reasonable person in the actor's situation would not have retreated; and

(3) when and to the degree she reasonably believes the deadly use is immediately necessary:

. . . .

(B) to prevent the other's imminent commission of aggravated kidnapping, murder, *sexual assault, aggravated sexual assault,* or aggravated robbery. (Emphasis added)

credibility of the defendant, the court stated:

> Whether the events actually happened that way [as described by the defendant] in this case was a question for the jury, but the jury was denied the opportunity to decide those facts because a charge on self-defense was not given. Whether the officer used greater force than necessary, and whether appellant's beliefs, fears and actions were reasonable as required by statute, were also fact issues for the jury, but the jury was also deprived of the opportunity to decide those issues because of the failure to instruct the jury on self-defense.

*Rodriguez v. State*, 544 S.W.2d at 384.

In *Romero v. State*, 663 S.W.2d 121 (Tex. App.—Houston [1st Dist.] 1983, pet. ref'd), the court held that the defendant was entitled to an instruction on self defense under section 9.32 of the Penal Code, since she had used deadly force to repel the deceased's attack. The court stated that the issue had been raised when "[a]ppellant testified that she shot the deceased because he was trying to rape her." *Romero v. State* at 122.

In *Hayes v. State*, 728 S.W.2d 804 (Tex. Crim.App.1987), the court held that the defendant was entitled to an instruction under section 9.32 of the Penal Code, since the issue was sufficiently raised by the testimony of the defendant and his wife. The testimony revealed that after an altercation with the complainant at the parking lot, the defendant went to his room, changed clothes and armed himself with a gun; that he returned to the parking lot where the altercation continued with the complainant; that the complainant emptied his coke bottle and struck the defendant with it; that the defendant grabbed for his gun and, during the ensuing struggle with the complainant, the weapon was fired accidentally. The version of the defendant was completely contradicted by state witnesses. Although the court held the instruction was required under these circumstances, it found harmless error because the actual charge delivered by the court was in fact more favorable to the defendant than the one that he requested.

In *Williams v. State*, 580 S.W.2d 361 (Tex.Crim.App.1979), the court held that the defendant's testimony raised the issue of self defense and an instruction was required. The defendant testified that he was confronted at a park by the complainant and his friend, who were carrying a tree limb and bottles of beer; that he was threatened and was forced to flee from the park, making it impossible to take his car; that he returned to the park armed with a shotgun to get his car, when he saw the complainant crouched over in a squatting position; that it appeared that the complainant had a gun; that he fired in front of the complainant to scare him; and, that he fired in the air when he thought the complainant was coming towards him with a gun.

Although there appear to be contradictions in this record, the following evidence served to raise the issue of self defense from a sexual attack:

1) Deputy Sheriff Kaiser, who originally arrested and questioned the appellant, testified that the appellant stated "He [the complainant] tried to rape me".

2) Deputy Sheriff Rodriguez, who also participated in the original arrest of the appellant, also testified that the appellant had told him that the complainant had tried to rape him; that the complainant had gone crazy, started taking off his shoes and socks and attempted to grab appellant's penis, while in the vehicle; that the complainant had chased the appellant and again attempted to grab his penis in a struggle when he caught up with him; and, that he fired back at the complainant when he was trying to get away a second time.

3) Deputy Sheriff McMillan testified that the appellant had told him that the complainant had gone crazy and attacked

him; that he jumped out of the car and ran from the complainant; that they got in a fight when the complainant caught up with him, but that he got away and fired back as he ran away.

4) Dr. Brown of the Bexar County Medical Examiner's office testified that from his examination, it was possible that the complainant or the defendant could have been trying to get away from the other and that it was possible that the victim could have been coming at the appellant at the time he was shot.

5) Texas Ranger Davis testified that when he investigated the incident, that the appellant was very cooperative and appeared to be trying to help locate the body; that the complainant was not wearing any shoes or socks when he was found; that Alan Taylor, who allegedly sold the truck to the appellant, and the appellant were in the same location within the Val Verde County jail as the appellant stated in the statement that he voluntarily gave on that date; and, that it was possible that if Ranger Davis was in fear of a sexual assault, he would have brandished a gun and attempted to stop the attacker from coming at him.

6) The voluntary statement of the appellant to Ranger Davis, in pertinent part, stated:

> While in jail in Del Rio I met another inmate named Allan Taylor. He agreed to sell me a Ford Pickup for $500.00. He said the truck was at a relatives named Loyd and drew a map which indicated Loyd's residence was between Medina and Bandera.
>
> . . . .
>
> While in Del Rio I met a man named Gerald Wright [complainant] who said he lived in Oklahoma City. He agreed to take me to Bandera to look at the truck I was to purchase from Allan Taylor. . . .
>
> . . . .
>
> After aways [sic] we turned left on a dirt road. We drove about two or three miles. All of a sudden Gerald

went beserk [sic] and started pulling his shoes and socks off. He was pulling things out of his pockets and throwing them in the car. He said he wanted my body or something like that and then grabbed my penis. The car had quit running and was coasting down the road. I pushed Gerald away and jumped out of the car. I ran off to my right into a very shallow creek. Gerald caught me from behind and was holding onto me and tried to grab my penis again.

> I tried to get away from him but couldn't. I remembered I had a pistol in my right back pocket. I was able to get it out and started shooting back toward Gerald. Gerald had let loose. I shot back at him until the gun was empty. It holds five shots.
>
> I then ran back to the car. I didn't know where Gerald was or if I had hit him.
>
> I got in the car and turned around and went back to the pavement. I turned right and had headed back to the drive-in service station where we bought beer. I was going to report what happened to the police.
>
> I got stopped before I got to the service station by a deputy sheriff who arrested me. . . .

7) Lynn Wright, the mother of the complainant, testified that the complainant had previously been in trouble for molesting a 14 year old girl as the girl went to school.

8) Appellant testified he met the complainant and was riding with the complainant to get a truck that was for sale; that the complainant suddenly started screaming and pulling his shoes and socks off and throwing things out of his pockets; that the complainant told appellant he wanted appellant's body and grabbed the appellant by the penis; that the appellant jumped out of the car and tried to escape but was caught by the complainant who knocked him in the water; that the complainant had his arms

around the appellant and again grabbed him by the penis; that he got away and shot at the complainant.

The majority here has erroneously concluded that the evidence in this record does not "rise to the level of a sexual or an attempted sexual assault as required for the use of a deadly weapon"[2]. In order to so hold, the majority would have to improperly discard as unbelievable all the evidence in this record of the alleged attempted sexual assault by the complainant against the appellant, which is the exclusive prerogative of the jury. *Hayes v. State*, 728 S.W.2d at 809; *Rodriguez v. State*, 544 S.W.2d 382.

The majority correctly recognizes that a defendant is not required to wait until he has suffered actual contact or penetration in order to justify defending himself with deadly force. The defendant is only required to show, as he has here, that he was put in fear of a sexual assault by the actions of the complainant, as that term is defined by Section 22.011 of the Penal Code. The actions of the complainant, as described by appellant to the investigating officers, by appellant's testimony and voluntary statement, and as substantiated by some of the physical evidence at the scene, had all the earmarkings of an attempt to sexually assault the appellant, if believed by the jury. The appellant raised the issue of self defense and was entitled to an instruction. Certainly, if the appellants in

*Moore, Rodriguez, Romero, Hayes,* and *Williams* were entitled to self defense instructions, as provided by section 9.32 of the Penal Code, under their facts, this appellant was just as entitled to the same instruction under the facts of this case. Because the issue of self defense under section 9.32 of the Penal Code was raised by the evidence, the court was required to submit a proper instruction in the jury charge if requested by the appellant.

The majority contends, however, that the appellant here failed to sufficiently request the instruction of the trial judge and has thus failed to preserve error. I disagree.

Article 36.14 of the Texas Code of Criminal Procedure requires that the appellant make his objections to the charge before it is read to the jury, specifying the "errors claimed to have been committed by omissions therefrom or in failing to charge upon issues arising from the facts" of the case. However, it does not require appellant "to present special requested charges to preserve or maintain any error assigned to the charge" and provides that "[t]he requirement that the objection to the court's charge be in writing will be complied with if the objections are dictated to the court reporter in the presence of the court and state's counsel, before the reading of court's charge to the jury." TEX. CRIM.PROC.CODE ANN. § 36.14 (Vernon Supp.1990).

"The real purpose of this enactment is to enable the trial judge to know in what

---

**2.** The applicable statute is TEX.PENAL CODE ANN. § 22.011 (Vernon 1989), hereinafter referred to as "section 22.011 of the Penal Code," which provides in part:

Sec. 22.011. Sexual Assault
(a) A person commits an offense if the person;
   (1) intentionally or knowingly:
   (A) causes the penetration of the anus or female sexual organ of another person who is not the spouse of the actor by any means, without that person's consent;
   (B) causes the penetration of the mouth of another person who is not the spouse of the actor by the sexual organ of the actor, without that person's consent; or
   (C) causes the sexual organ of another person who is not the spouse of the actor, without that person's consent, to contact or pen-

etrate the mouth, anus, or sexual organ of another person, including the actor; ....
(b) A sexual assault under Subsection (a)(1) of this section is without the consent of the other person if:
   (1) the actor compels the other person to submit or participate by the use of physical force or violence;
   (2) the actor compels the other person to submit or participate by threatening to use force or violence against the other person, and the other person believes that the actor has the present ability to execute the threat;

   . . . . .

   (8) the actor compels the other person to submit or participate by threatening to use force or violence against any person, and the other person believes that the actor has the ability to execute the threat.

respect the defendant regards the charge as defective and to afford him an opportunity to correct it before reading the charge to the jury." *Pennington v. State*, 697 S.W.2d 387, 390 (Tex.Crim.App.1985), *citing Seefurth v. State*, 422 S.W.2d 931 (Tex. Crim.App.1969).

A defective requested charge may, nevertheless, serve to call the court's attention to the need for a defensive issue, *Williams v. State*, 630 S.W.2d 640, 643 (Tex.Crim.App.1982) (en banc), and a correct instruction should be given in the charge, provided the issue was raised by evidence supporting the defense. *Austin v. State*, 541 S.W.2d 162, 166 (Tex.Crim. App.1976). This is more true when the defective requested instruction is not embraced in the court's charge at all and involves the only defensive theory advanced by the defense and revealed by the evidence. *Moore v. State*, 91 Tex.Crim. 118, 237 S.W. 931, 933 (1922). The law does not require precise wording in the requested instructions, but that it only be "sufficient to call the trial court's attention to the omission in the court's charge." *Stiles v. State*, 520 S.W.2d 894, 896–97 (Tex.Crim.App.1975); *Stone v. State*, 703 S.W.2d 652, 655 (Tex.Crim.App.1986). When the requested charge is clearly incorrect, it nevertheless preserves error if "[t]he record shows ... that despite the obvious error in the requested charge, the trial court understood ..." what the appellant was objecting to. "Thus, the trial court was apprised of appellant's objection to omissions in the charge." *Stone v. State*, 703 S.W.2d at 655.

This record reflects:

1) That appellant clearly indicated during his initial voir dire remarks to the court and jury, that it was the intent of the defense to follow one defensive theory: self defense.

2) That appellant again clearly set out his one defensive theory of self defense under section 9.32 of the Penal Code in the opening remarks of the defense, stating:

... They could only surmise and they can only surmise what happened. They can come up with all kinds of theories and all kinds of suspicions. There's only one person who can tell you what happened besides the person who is dead. We don't deny there was a person killed out there. We don't deny the life was taken. We're sorry it happened, but the fact of the matter is my client was attacked. He was injured. He was in fear and early on we talked about *self-defense and for one of the things you can defend yourself for is a sexual assault.* (Emphasis added)....

3) That all the witnesses were questioned regarding the alleged attempted sexual assault the appellant contended justified his defense with deadly force.

4) That the following transpired after the charge was prepared and before it was read to the jury, when the appellant was given the opportunity of objecting to the charge:

THE COURT: Gentlemen, I have been presented with a Charge of the Court in the State of Texas vs. Larry Kenneth McKee. Does the Defendant have any objections to the Charge of the Court?

MR. KOZLOWSKI [Defense Counsel]: Yes, Your Honor, *the Defendant objects to the fact that the issue of self-defense has been omitted from the Charge of the Court as discussed with the Court prior to this hearing.* (Emphasis added)

THE COURT: Okay.

MR. KOZLOWSKI: *We feel that we have met the burden of showing self-defense issue* and that the burden is now upon the State, as provided in several cases, which I would like to tender to the Court regarding self-defense and the burden then shipped to the State to disprove the fact that self-defense occurred out there, Your Honor. These are the leading cases from the most recent down through the

years. *It's our belief that we have raised the issue of self-defense, Your Honor, and we're moving that be included within the Charge.* (Emphasis added) We also would ask leave of the Court for the Court for an instructed verdict in that the State of Texas has not met the burden of showing evidence sufficient to overturn the issue of self-defense in this case. There is no uncorroborated or any other evidence by the State of Texas presented to show that it was not self-defense upon the Defendant in regards to this incident and I believe that both case law that you have there, and request the Court to look it over, states that as a matter of law the trier of the fact then has to find that the State has failed to meet its burden in overturning the issue of self-defense.

THE COURT: The Court is of the opinion that *the defense of self-defense has not been raised by the evidence as that defense is outlined in the statute and because of the failure of the Defendant to raise that defense, he is not entitled to an issue on self-defense* and it will not be a part of the court's Charge and the Defendant's Motion for Instructed Verdict for Acquittal is denied. Anything further, gentlemen? [Emphasis added]

MR. KOZLOWSKI: Your Honor, *I would like the Court to reflect-that the record reflect that the Court was provided a copy of it from McClung's as to what we urged an issue of self-defense.* I would like to also have the right to file a formal Bill of Exception in regards to this. (Emphasis added)

THE COURT: Okay, are you ready to have them brought in, Mr. Curry?

MR. CURRY [Prosecutor]: I'm sorry, Your Honor?

THE COURT: Anything, do you have anything?

MR. CURRY: Unless the Court wants some argument, I believe that *the Defendant has put on evidence as*

*to instructed verdict and also as to self-defense with a deadly weapon.* The Court has already ruled, but we would submit that there be no showing to support that Charge *pursuant to Section 9 of the Penal Code.* (Emphasis added)

Thus, as in *Stiles* and *Stone,* "the trial court [here] was apprised of appellant's objection to omissions in the charge." *Stone,* 703 S.W.2d at 655. Even if the requested charge could be considered defective, as in *Williams,* it served to call the court's attention to the need for a defensive issue; as in *Austin,* a correct instruction should have been given in the charge in that the issue was raised by evidence which supported the defense; as in *Moore,* the instruction should have been given in the court's charge, since the court's charge did not embrace the defensive issue at all, and it was the only defensive theory advanced by the defense and revealed by the evidence.

Further, this record clearly reflects appellant notified everyone including the trial judge at the very outset of the case that the only defense he intended to present on his behalf was self defense from a sexual assault. Every witness was questioned regarding the "self defense from a sexual assault" allegations of the appellant. Timely objections by the appellant notified the trial judge that the charge of the court failed to include any self defense instructions at all and one was requested. The record further indicates that a copy of such a charge from McClung's was provided to the court, although it is not found in the record. The court's response to appellant clearly indicates the court's attentiveness during the trial and that the only defense pursued by the appellant had indeed not gone unnoticed by the trial judge. However, the trial judge simply denied the request because "the defense of self-defense has not been raised by the evidence as that defense is outlined in the statute."

The majority insists that the appellant did not preserve error because he did not

specifically state to the trial judge that the self defense issue was in order "because the evidence showed that appellant used deadly force to prevent the imminent commission of sexual assault." However, the law does not require precise wording for a requested defensive instruction if the trial court is sufficiently apprised of the omission; it was uncontested that deadly force was used by the appellant upon the complainant; it was clear at the outset and throughout the trial that the appellant contended he used the deadly force to repel the complainant's sexual assault; and, at the time the appellant objected to omission of the self defense instruction, the trial judge responded there was no evidence to support a self defense instruction as "outlined in the statute," which could only have reference to section 9.32 of the Penal Code, it being the only self defense statute applicable to the circumstances set out by the evidence.

Furthermore, the District Attorney likewise was fully aware of appellant's requested self defense instruction, since he also referred to appellant's requested instruction as "self-defense with a deadly weapon ... pursuant to Section 9 of the Penal Code." Thus, the prosecutor could only be referring to section 9.32 of the Penal Code, which is the only self defense provision under section 9 which would be applicable to the circumstances set out by the evidence. We further note that the prosecutor so stated, after conceding *"the Defendant has put on evidence ... as to self-defense with a deadly weapon."*

The majority has misplaced its reliance on *Pennington v. State,* 697 S.W.2d 387, 390 (Tex.Crim.App.1985). *Pennington* involved an appeal from a murder conviction wherein appellant complained that the trial court had committed reversible error by instructing on the lesser and included offense of voluntary manslaughter over his objections. The record revealed the following pertinent objection:

MR. GREENWOOD (Defense Counsel): The Court has charged on voluntary manslaughter. We object to the Court's charge on voluntary manslaughter. *We do not want any lesser included offenses in the charge and we object to it; straight murder or not guilty....*

In concluding that the objection was insufficient to preserve the error, the court stated:

An examination of the objections made by the appellant does not show that he distinctly specified to the trial judge that he was objecting to the submission of voluntary manslaughter 'for the reason that such lessor included offense was not raised by the evidence....'

*Pennington* at 390.

*Pennington* is clearly distinguishable from the case at bar. Where *Pennington* involved an appellant that *did not want a lesser and included offense charge* simply because *he did not want it, instead of because the evidence did not raise it;* the case here involves an appellant that *requested a defensive charge because the evidence raised it as the only defense clearly and exclusively pursued by the appellant, which was supported by the evidence.* *Pennington* is not controlling here.

Therefore, even if the requested self defense instruction here could be considered as incorrect, it nevertheless preserved error, since this record clearly shows that despite any possible error in the requested charge, the trial court understood what the appellant was objecting to and was apprised of the omission in the charge. *Stone* at 655.

Since the evidence raised the self defense issue under Sec. 9.32, and the appellant sufficiently apprised the trial judge of the omission of the instruction in the charge, the trial court should have included a proper instruction. Failing to do so requires a reversal, since the only defense presented by the appellant was not included in the charge for the consideration of the jury. This error was certainly harmful to the appellant and deprived the appellant of a

fair trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985).

As the Texas Court of Criminal Appeals indicated in *Gassett v. State*, 587 S.W.2d 695, 697 (Tex.Crim.App.1979), and *Banks v. State*, 656 S.W.2d 446 (Tex.Crim.App.1983) (en banc), a holding such as this does not require the jury to accept the version of the facts set out by the defense. It merely is a holding that the evidence introduced was sufficient to require a proper self defense instruction as raised by the evidence. I would reverse and remand.

